This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-41530**

**AARON GARRETT, Personal Representative
of the Wrongful Death Estate of Steven P.
Gerecke, Deceased,**

       Plaintiff-Appellant,

v.

**STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,**

       Defendant-Appellee,

and

**JEREMIAH KING and CHRISTOPHER
RODRIGUEZ,**

       Defendants.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Bryan P. Biedscheid, District Court Judge**

Elias Law P.C.
Michael C. Ross
Albuquerque, NM

for Appellant.

Allen Law Firm, LLC
Meena H. Allen
Kerri L. Allensworth
Albuquerque, NM

for Appellee.

MEMORANDUM OPINION

**DUFFY, Judge.**

**{1}**     Plaintiff, as personal representative of the Estate of Steven P. Gerecke, Jr., appeals the district court's order granting summary judgment in favor of State Farm Mutual Automobile Insurance Company. Plaintiff contends that the district court erred in concluding that none of the Gereckes' three uninsured/underinsured motorist (UM/UIM) policies with State Farm covered the shooting death of Steven Gerecke. Concluding that the undisputed facts fail to establish a sufficient causal nexus between the use of the vehicle and Mr. Gerecke's death, *see Britt v. Phoenix Indemnity Ins. Co.*, 1995-NMSC-075, 120 N.M. 813, 907 P.2d 994, we affirm.

**BACKGROUND**

**{2}**     The parties do not dispute the relevant facts on appeal.  On June 26, 2015, the Albuquerque Police Department responded to reports of shots fired at Mr. Gerecke's house. Mr. Gerecke lived on Chihuahua Avenue with his wife, Venita Gerecke. Upon arrival, police found Mr. Gerecke deceased in his driveway. Police located a garage door opener sitting on Mrs. Gerecke's Honda. Police discovered a black bag, tan purse, laptop, and personal items belonging to Mrs. Gerecke lying on the north east corner of Chihuahua Avenue and Witcher Avenue. Mrs. Gerecke reported to police that the items found on the street had been in her house when she went to sleep that night. Police also found bullet casings near the Gerecke residence.

**{3}**     A neighbor of the Gereckes told police that around 2:00 a.m., he awoke and witnessed what appeared to be seven to ten subjects ranging from sixteen to twenty-one years old on foot, moving as a pack, toward his neighbor's house. Ten minutes after seeing the group of teens, the neighbor heard gunshots. Another neighbor stated that she heard three gunshots and saw three male subjects run east on Witcher Avenue from Chihuahua Avenue and enter a dark colored mid-sized SUV. The vehicle was parked on Witcher Avenue.

**{4}**     Police arrested six teens aged fourteen to seventeen and charged them with homicide in connection with the shooting death of Mr. Gerecke. One of the teens told police that he and his friends "all exited [a] stolen SUV and went to 'mob,'" meaning "go in a big group and break into cars and houses." The teens walked up and down the street checking door handles on vehicles with the intent of either stealing the vehicles or breaking into residences using garage door openers obtained from the vehicles. A detective reported that while "mobbing," large groups of unknown subjects travel through a neighborhood and burglarize multiple vehicles and homes at a time.

**{5}**     The Gereckes carried three State Farm polices providing UM/UIM coverage. The policies state:

> We will pay for damages for:

> (1)     bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be:
>
> > (a)     sustained by an insured, and
>
> > (b)     caused by an accident arising out of the operation, maintenance or use of an uninsured motor vehicle as a motor vehicle.

Plaintiff filed a complaint in district court on behalf of Mr. Gerecke's estate seeking to recover UM/UIM benefits under the policies. Plaintiff claimed that the assailants were uninsured motorists who used a vehicle as an active accessory in the commission of their crimes.

**{6}** State Farm moved for summary judgment on the basis that Mr. Gerecke's injuries "[were] not sufficiently related to the ownership, maintenance, or use of the vehicle to trigger UM coverage." Plaintiff did not dispute State Farm's statement of facts in his response. Plaintiff did, however, assert four additional facts that generally established that an officer interviewed two people who witnessed a vehicle fleeing the scene. One of the witnesses stated that the vehicle was parked outside of her house on Witcher Avenue, and she reported observing three males running and yelling "let's go" prior to entering a dark colored mid-size SUV. The witness also stated that there appeared to be a driver waiting for the three males to enter the vehicle. After a hearing on the motion the district court granted State Farm's motion. Plaintiff appeals.

## DISCUSSION

**{7}** Because the facts are undisputed in this case, our review centers on whether the district court correctly applied the law to the facts. *McKinley v. Interinsurance Exch. of the Auto. Club*, 2022-NMCA-055, ¶ 8, 517 P.3d 937. "Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* ¶ 7 (internal quotation marks and citation omitted). "We review a grant of summary judgment de novo, viewing the facts in a light most favorable to the nonmoving party and drawing all reasonable inferences in support of a trial on the merits." *Castro v. Jones Contractors, Inc.*, 2024-NMCA-014, ¶ 10, 541 P.3d 182. "At the summary judgment stage, if the moving party satisfies its initial burden to make a prima facie factual showing warranting summary judgment, the burden shifts to the non-movant to demonstrate the existence of specific evidentiary facts [that] would require trial on the merits." *McKinley*, 2022-NMCA-055, ¶ 7 (internal quotation marks and citation omitted). "If the party opposing summary judgment adduces evidence regarding material disputed facts and/or reasonable inferences, summary judgment is inappropriate." *Id.* However, "[w]hen no facts are in dispute and the undisputed facts lend themselves to only one conclusion, the issue may properly be decided as a matter of law." *Castro*, 2024-NMCA-014, ¶ 10 (alteration, internal quotation marks, and citation omitted).

**{8}**     We understand Plaintiff to argue that the district court erred in granting summary judgment based on its application of the *Britt* factors to the undisputed facts. In *Britt*, 1995-NMSC-075, ¶¶ 15-16, the New Mexico Supreme Court adopted a three-part test to determine whether UM/UIM coverage is available for intentional conduct and the resulting harm arising out of the use of an uninsured vehicle. The test from *Britt* first requires consideration of "whether there is a sufficient causal nexus between the use of the uninsured vehicle and the resulting harm. Such a causal nexus requires that the vehicle be an active accessory in causing the injury." *Id.* ¶ 15 (internal quotation marks and citation omitted). If there is a sufficient causal nexus, the court next considers "whether an act of independent significance broke the causal link between the use of the vehicle and the harm suffered." *Id.* Lastly, the court must consider "whether the 'use' to which the vehicle was put was a normal use of that vehicle." *Id.* The insured must satisfy all three requirements to establish that coverage exists under the policy. *Haygood v. United Servs. Auto. Ass'n*, 2019-NMCA-074, ¶ 10, 453 P.3d 1235.

**{9}**     In this case, the district court found that Plaintiff failed to satisfy the *Britt* test because the vehicle was not an active accessory and the use of the vehicle was too attenuated to the crimes. The district court further concluded that even if Plaintiff could satisfy the first factor, Plaintiff fails to meet the second factor of *Britt* because the assailants' actions were of independent significance to break the causal link between the use of the vehicle and the harm caused. Because we agree with the district court that Plaintiff failed to demonstrate a sufficient causal nexus between the use of the vehicle and Mr. Gerecke's death under the first *Britt* requirement, we only address Plaintiff's arguments regarding the first factor. *See Crespin v. Safeco Ins. Co. of Am.*, 2018-NMCA-068, ¶ 33, 429 P.3d 968 (concluding that, under the facts of the case, the vehicle was not an active accessory in causing the injury and thus it was unnecessary to address the second *Britt* factor).

**{10}**     Plaintiff maintains that the vehicle contributed to Mr. Gerecke's death because it was used to position the assailants in the neighborhood, transport weapons, conceal stolen goods, and flee the scene. Plaintiff further emphasizes that even though the assailants exited the vehicle, this fact does not preclude a court from finding that the vehicle was an active accessory. Based on prior precedents from this Court, we conclude that the relevant, undisputed facts do not support an inference that the assailants used the vehicle as an active accessory in causing Mr. Gerecke's death.

**{11}**     In *Crespin,* this Court held that "the mere fact that the vehicle is used to transport the assailant and/or the victim to or from the scene of the intentional tort is not a sufficient connection." 2018-NMCA-068, ¶ 30. We further acknowledged that "no court has concluded that an intentional tort arose out of the operation or use of a vehicle solely because the tortfeasor planned or intended to use the vehicle to travel to the place where he or she would commit the tort." *Id.* ¶ 31. Such is the case here.

**{12}**     The record indicates that the assailants only used the vehicle to travel to Mr. Gerecke's neighborhood to engage in mobbing and then to leave the area after the shooting. Contrary to Plaintiff's contentions, the undisputed facts do not show that the

assailants kept weapons in the vehicle or that the vehicle was used to facilitate the transport of weapons. *See McKinley*, 2022-NMCA-055, ¶ 12 (stating that the record would have to indicate that weapons were kept in the vehicle to support an inference that the tortfeasor used the vehicle to access weapons to facilitate an attack). In fact, the record indicates that the assailants parked the vehicle on a different street from where the shooting occurred, such that the vehicle was not readily accessible to retrieve weapons or conceal stolen property, and there is no evidence that the shooter was in or near the vehicle at the time of the shooting. *Cf. Barncastle v. Am. Nat'l Prop. & Cas. Cos.*, 2000-NMCA-095, ¶ 9, 129 N.M. 672, 11 P.3d 1234 (concluding that the vehicle was an active accessory in the attack where the driver used the vehicle to get into a position where the passenger could get out and shoot the victim, and then to escape the scene at a high rate of speed).

**{13}**   Likewise, to the extent Plaintiff's four additional undisputed facts tend to show that the assailants used the vehicle to flee the scene, this, too, is not enough to establish a causal nexus. The intended use of the vehicle to flee or transport stolen property does not "demonstrate use of the vehicle to facilitate an attack" against Mr. Gerecke. *See McKinley*, 2022-NMCA-055, ¶ 15; *Crespin*, 2018-NMCA-068, ¶ 32 ("The test in New Mexico is a 'sufficient' causal nexus that makes the vehicle an '*active* accessory' to the tort." (citation omitted)).

**{14}**   In sum, the undisputed facts of record fail to demonstrate a sufficient causal nexus between the use of the vehicle and the resulting harm. Consequently, the district court did not err in its grant of summary judgment or application of the *Britt* test.

**CONCLUSION**

**{15}**   For the foregoing reasons, we affirm.

**{16}   IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Chief Judge**

**SHAMMARA H. HENDERSON, Judge**